**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOC # 12

U.S. DISTRICT COURT
FILED
JUN 1 7 2002
S. D. OF N.Y.

------------------------------------X

FG HEMISPHERE ASSOCIATES, L.L.C.,   :

                  Plaintiff,   :

    -against-   :

REPUBLIQUE DU CONGO,   :

                Defendant.   :

01 Civ. 8700 (SAS)(HBP)

REPORT AND
RECOMMENDATION

------------------------------------X

PITMAN, United States Magistrate Judge:

TO THE HONORABLE SHIRA A. SCHEINDLIN, United States
District Judge,

I.   Introduction

On December 19, 2001, the Honorable Shira A.
Scheindlin, United States District Judge for the Southern
District of New York, referred this matter to me to report and
recommend concerning plaintiff's motion for a default judgment.

Pursuant to the Order of Reference, I issued an Order
on December 20, 2001 which provided, in pertinent part, as
follows:

> Preliminarily, it appears that to the
> extent plaintiff is seeking attorney's fees,
> its application is not in conformity with New
> York State Ass'n for Retarded Children v.
> Carfey, 711 F.2d 1136, 1147-48 (2d Cir.
> 1983).

> Accordingly, it hereby ORDERED that:

> 1.  No later than January 21, 2002,
> plaintiff shall either supplement its motion
> with the documentation required by New York

> <u>State Ass'n for Retarded Children v. Carey</u>,
> <u>supra</u>, or explain why plaintiff believes that
> such documentation is not necessary.
>
> 2. No later than February 20, 2002,
> defendant shall submit its opposition, if
> any, to plaintiff's application for a default
> judgment.  <u>IF DEFENDANT (1) FAILS TO RESPOND
> TO PLAINTIFF'S WRITTEN SUBMISSIONS, OR (2)
> FAILS TO CONTACT MY CHAMBERS BY FEBRUARY 20,
> 2002 AND REQUEST AN IN-COURT HEARING, IT IS
> MY INTENTION TO ISSUE A REPORT AND RECOMMEN-
> DATION CONCERNING PLAINTIFF'S APPLICATION FOR
> A DEFAULT JUDGMENT AND THE AMOUNT OF DAMAGES,
> IF ANY, TO BE AWARDED, ON THE BASIS OF PLAIN-
> TIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN
> IN-COURT HEARING.</u>  <u>See</u> <u>Transatlantic Marine
> Claims Agency v. Ace Shipping Corp.</u>, 109 F.3d
> 105, 111 (2d Cir. 1997); <u>Fustock v.
> ContiCommodity Services, Inc.</u>, 873 F.2d 38,
> 40 (2d Cir. 1989) ("[I]t is not necessary for
> the District Court to hold a hearing, as long
> as it ensured that there was a basis for the
> damages specified in a default judgment.")

(Emphasis in original).

Copies of my December 20 Order were mailed to counsel

for plaintiff, CT Corporation ("CT") as agent for defendant and

to the following two addresses at which the summons and complaint

were served:

Caisse Congolaise d'Amortissement
B.P. 2090
Brazzaville
Republique du Congo

H.E. Mathias Dzon
Ministre de L'Economie, des Finances
   et du Budget
Centre Administratif, Quartier Plateau
B.P. 2093
Brazzaville
Republique du Congo

The copy of the Order sent to CT has been returned to

my Chambers with a cover letter in which CT claimed that it was

2

not defendant's agent.  No other copies of the Order have been
returned as undeliverable.

To date, defendant has not made any written submission
to me, nor has it contacted my chambers in any way.  Accordingly,
on the basis of plaintiff's written submissions alone, I recom-
mend that the Court make the following findings of fact and
conclusions of law.

II.  <u>Findings of Fact</u>

A.  <u>Overview</u>

1.  In essence, this is a simple collection action in
which plaintiff seeks to recover the unpaid principal and accrued
interest due on a loan in the amount of $35,916,075.00 made in
1982 by plaintiff's predecessor in interest.  According to
plaintiff, the unpaid principal balance, plus accrued interest,
through June 30, 2002, totals $151,931,797.10.  In addition to
the principal balance and accrued interest, plaintiff also seeks
to recover attorney's fees and disbursements in the amount of
$152,791.91

B.  <u>The Parties</u>

2.  Plaintiff FG Hemisphere Associates, L.L.C.  ("FG")
is a limited liability company organized and existing under the
laws of the State of Delaware, with its principal place of

business at 150 East 58th Street, 26th Floor, New York, New York (Complaint ("Comp.") ¶ 1[1]).

3.   Defendant, Republique du Congo (the "Congo"), formerly known as Republique Populaire du Congo, is a foreign state within the meaning of 28 U.S.C. § 1603(a) (Comp. ¶ 2).

    C.   The Transaction
         In Issue

4.   On or about July 7, 1982, Banco do Brasil S.A. ("BdB") entered into a loan agreement with the Congo pursuant to which BdB lent the Congo $35,916,075 (Comp. ¶¶ 4, 7; Affidavit of Peter J. Grossman, sworn to December 18, 2001 ("Grossman Aff."), ¶ 11).   The loan was memorialized in a Note and written Loan Agreement (Grossman Aff. Exs. B & C, respectively).   The loan was made to finance construction of a highway in the Congo (Comp. ¶ 7).

5.   In connection with the disbursement of the loan, IRB Brasil Resseguros S/A ("IRB"), an agency of the government of the Federal Republic of Brazil, executed and delivered to the construction firm hired by the Congo to construct the highway -- Constructora Andrade Gutierrez ("Andrade") -- a credit insurance

---

As a result of defendant's default, all the allegations of the Complaint, except as to the amount of damages, must be taken as true.   Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

4

policy dated January 12, 1984 (the "Credit Insurance Policy") pursuant to which IRB insured the payment to Andrade of ninety percent of all amounts owing to Andrade by the Congo (Comp. ¶ 11; Grossman Aff. ¶ 15).

6.    On the same day that the Credit Insurance Policy was issued, its terms were amended through the addition of special conditions in which IRB agreed to pay Andrade 85% of each of the semi-annual repayments to be made to Andrade by the Congo, together with interest thereon (Comp. ¶ 12; Grossman Aff. ¶ 16).

7.    On May 17, 1984, Andrade assigned all of its rights under the Credit Insurance Policy to BdB (Comp. ¶ 13; Grossman Aff. ¶ 17).

8.    After entering into two letter agreements in 1984 and 1985 that extended the term of the loan, the Congo defaulted on the loan. At the time of the Congo's default, the principal balance of the loan was $34,416,076.00 (Comp. ¶¶ 14-15; Grossman Aff. ¶¶ 18-19).

9.    After the Congo's default, IRB satisfied its obligations to BdB under the Credit Insurance Policy and was subrogated to 85% of the then outstanding principal balance or $29,253,664.60 (Comp. ¶ 16; Grossman Aff. ¶ 20 and Ex. E thereto at 1 and 2).

10.    In addition, in January 1993 and September 1997, the Congo expressly acknowledged, in writing, the validity of its obligation under the Loan Agreement and Note in issue here (Comp. ¶ 19; Grossman Aff. ¶ 22 and Ex. G thereto)

11.   By an assignment dated April 20, 2001, plaintiff FG acquired the rights that IRB had acquired, as subrogee, to repayment of the loan (Comp. ¶ 17; Grossman Aff. ¶ 21 and Ex. F thereto).

12.   FG has notified the Congo that it purchased and had been assigned all of IRB's interest in the Note and Loan Agreement that memorialized the 1982 loan and has invited the Congo to discuss a possible resolution of the matter (Comp. ¶ 20; Grossman Aff. ¶ 23).

13.   As of December 2001, the Congo has not responded to FG's communications and has not made any payment to FG pursuant to the Note and Loan Agreement (Comp. ¶ 21; Grossman Aff. ¶ 24).

D.   Service of the
     Summons and Complaint

14.   In its Loan Agreement with BdB, the Congo agreed to appoint an irrevocable agent for service of process in New York.   The Congo subsequently appointed CT as its agent for service of process (Grossman Aff. Ex. C § 13(F); Affidavit of Mark S. McNeill, sworn to December 17, 2001 ("McNeill Aff."), ¶¶ 3, 4, 6 and Ex. B thereto).

15.   In addition, the Congo consented in the Loan Agreement to service by registered or certified mail to the Caisse Congolaise d'Amortissement, Ministry of Finance, the Congo (Grossman Aff. Ex. C § 13(F); McNeill Aff. ¶ 5).

6

16.  Copies of the Summons and Complaint have been
delivered to CT as agent for the Congo.  The Summons and Com-
plaint have also been served on the Congo by registered mail.
Return receipts have been received by counsel for FG confirming
the actual delivery of the summons and complaint to the Congo
(McNeill Aff. ¶¶ 7-9 and Exs. B-F thereto).

17.  According to the Court's records, the Congo has
not answered or moved with respect to the complaint, and has not
contacted the Court in any manner in connection with this action.
It is in default.

E.  Calculation of
    Interest

18.  With respect to periods in which the loan is not
in default, the Loan Agreement between BdB and the Congo provides
for interest at the rate of 1.75% above the London Interbank
Rate, with the interest rate to be recalculated every three
months to reflect fluctuations in the London Interbank Rate
(Grossman Aff., Ex. C at § 4).

19.  With respect to periods in which the loan is in
default, the loan agreement provides for a "Post-Default Rate" of
interest which is equal to the greater of

> (i) 1% above the rate payable in respect of
> such principal amount for the Interest Period
> ending on the date of maturity of such prin-
> cipal amount or (ii) 3-1/2% above the rate
> notified by the London branch of [BdB] from
> time to time as being the rate at which [BdB]
> is offered U.S. dollars for deposit by lead-
> ing banks in the London interbank market for
> such successive periods . . . as [BdB] shall

7

> choose in its sole discretion and in an
> amount comparable to the aggregate unpaid
> principal amount of the Loans then past due .
> . . .

(Grossman Aff. Ex. C at § 4).

20. Curiously, neither the complaint nor FG's submis-
sions in support of its application for a default judgment set
forth the date of the Congo's default. No explanation is offered
for FG's failure to identify the date of default, and it is odd
that such a basic fact has been omitted from FG's submissions.
Nevertheless, although there is no express statement of the date
of default, it can be inferred from a close reading of the
exhibits. The final agreement modifying the loan agreement
required the Congo to make six semi-annual installments of
principal in the amount of $5,736,912.50 beginning on January 9,
1986 (Grossman Aff. Ex. C (Letter dated Sept. 9, 1985)). Thus,
it appears that the principal balance of the loan at the time of
this modification was 6 x $5,736,912.50 or $34,421,475.00. Since
FG has offered evidence that the principal balance due at the
date of default was $34,416,076.00 (Grossman Aff. ¶ 19), it can
be inferred that the Congo defaulted on the first of the six
installments due under the final modification agreement and that
the date of default was, therefore, January 9, 1986.

21. FG has submitted interest calculations which
calculate the total interest due as the sum of four component
parts: (1) interest on unmatured principal; (2) interest on
interest on unmatured principal; (3) interest on overdue princi-
pal, and (4) interest on interest on overdue principal (Affidavit

8

of John D. Finnerty, sworn to December 17, 2001 ("Finnerty Aff."), ¶ 3).

22.   Interest on the latter three components is calculated at the Post-Default Rate and assumes January 9, 1986 is the date of default (Finnerty Aff. ¶¶ 11, 15 and 20 and Ex. B thereto at footnote 4).

23.   The interest due on unmatured principal as of December 31, 2001 is $2,649,352.71 (Finnerty Aff. ¶ 9 and Ex. B thereto).  The interest on interest on unmatured principal as of December 31, 2001 is $6,772,356.48 (Finnerty Aff. ¶ 13 and Ex. B thereto).  The interest on overdue principal as of December 31, 2001 is $46,277,743.30 (Finnerty Aff. ¶ 17 and Ex. C thereto). Finally, the interest on interest on overdue principal as of December 31, 2001 is $59,634,325.59 (Finnerty Aff. ¶ 22 and Ex. C thereto).  The total of these interest sums is $115,333,778.00. The additional interest that has accrued between December 31, 2001 and March 15, 2002 is $2,914,510.72 ($39,385.28 per day x 74 days) (Finnerty Aff. ¶¶ 23-24) and the additional interest that has accrued and will accrue through June 30, 2002 is $4,429,843.87 ($41,400.41 per day x 107 days) (Supplemental Affidavit of John D. Finnerty, sworn to April 12, 2002 ¶ 2).  The grand total of all interest through June 30, 2002 is $122,678,132.50.

F.   Attorneys' Fees

24.   The loan agreement also provides for recovery of attorneys' fees in the event of default (Grossman Aff. Ex. C at § 13(D)(ii)).

25.   FG has submitted billing records reflecting that its counsel spent a total of approximately 330 hours working on this matter.  This figure is claimed to represent the work of 18 attorneys and/or paralegals.´  Despite the well known components of the lodestar method of calculating attorney's fees, FG has not submitted the hourly rates charged for its attorneys nor, with one exception, has it submitted any information concerning their experience or years of practice (Ex. A to the Affidavit of Danforth Newcomb, sworn to January 7, 2002).  FG claims a total of $129,238.50 in attorneys' fees and $23,553.41 in disbursements for a total of $152,791.91 (Affidavit of Danforth Newcomb, sworn to December 17, 2001, ¶¶ 13-14).

---

´The billing records submitted by plaintiff identify the following individuals as having worked on this matter:  Jean Campbell, Roberta Cherman, Doniyell Curtis, Luis Feliciano, Alfredo Flores, Luis Gonzalez, Peter Griffin, Olav Haazen, Panagiotis Katsambas, Maria Molinelli, Mark McNeill, Danforth Newcomb, Joan Perez, Corey Rayburn, Kate Seib, Margaret Tillett, Henry Weisburg, Ira Weiner.  The billing records do not indicate which of these individual are attorneys.

III.  Conclusions of Law

A.  Subject Matter Jurisdiction

26.  This is a non-jury action and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330.

27.  Notwithstanding the fact that defendant is a foreign state, the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11, does not deprive the Court of jurisdiction in this matter.

28.  First, in the Loan Agreement that is at the core of this litigation, the Congo expressly waived the defense of sovereign immunity. Specifically, the Loan Agreement provides:

> To the extent that the Borrower or any of the assets, revenues or properties of the Borrower or any central bank or monetary authority thereof has or hereafter may acquire any right of immunity from suit, from the jurisdiction of any court (including but not limited to any court of the United States of America or the State of New York), from judgment, from execution on a judgment, from set-off or attachment (whether before or after judgment) on the grounds of sovereignty, or otherwise, the Borrower hereby irrevocably waives such rights of immunity in respect of its obligations under this Agreement and the Note and in respect of any actions or proceedings, wherever brought, to execute or otherwise enforce any judgment obtained against it for breach of such obligations, and further irrevocably agrees that it and such assets, revenues and properties are and shall be subject to suit, jurisdiction of any court, judgment, execution on a judgment, set-off and attachment (whether before or after judgment) on account of the indebtedness and other obligations incurred by it under this Agreement and the Note.

11

(Grossman Aff. Ex. C at § 13(H)).  Although the waiver provision
of the Foreign Sovereign Immunities Act is to be narrowly con-
strued, Kern v. Oesterreichische Elektrizitaetswirtschaft AG, 178
F. Supp.2d 367, 374 (S.D.N.Y. 2001), the broad waiver provision
here is effective to waive the protection of sovereign immunity.
See Proyecfin de Venezuela, S.A. v. Banco Industrial de Vene-
zuela, S.A., 760 F.2d 390, 393-94 (2d Cir. 1985).

     29.  Second, the defense of sovereign immunity is not
available in actions arising out of a foreign state's "commercial
activity" in the United States.  28 U.S.C. § 1605(a)(2).  The
borrowing of money, which is the subject matter of the claim
here, is "commercial activity" within the meaning of Section
1605(a)(2).   Republic of Argentina v. Weltover, Inc., 504 U.S.
607, 613-14 (1992).

    B.  Personal Jurisdiction
       and Venue

    30.  In Section 13(F) of the Loan Agreement, the Congo
expressly consented to the jurisdiction of this Court and ex·
pressly consented to venue in this District:

> Any suit, action or proceeding against
> the Borrower with respect to this Agreement,
> the Loans or the Note may be brought in the
> Supreme Court of the State of New York, Coun-
> ty of New York or in the U.S. District Court
> for the Southern District of New York or in
> any competent courts of Republique Populaire
> du Congo, as the Bank in its sole discretion
> may elect, and the Borrower hereby accepts
> the non-exclusive jurisdiction of such courts
> for the purpose of any such suit, action or
> proceeding. . . .  In addition, the Borrower
> hereby irrevocably waives, to the fullest

> extent permitted by law, any objection which
> it may now or hereafter have to the laying of
> venue of any suit, action or proceeding aris-
> ing out of or relating to this Agreement or
> the Note brought in the State of New York,
> and hereby further irrevocably waives any
> claim that any such suit, action or proceed-
> ing brought in the State of New York has been
> brought in an inconvenient forum.

(Grossman Aff. Ex. C at § 13(F)).

31.   Since the Congo was served in accordance with the
terms of its agreement with BdB, the Court may exercise personal
jurisdiction over it.   28 U.S.C. § 1608(a)(1) (service upon a
foreign state may be made "by delivery of a copy of the summons
ans complaint in accordance with any special arrangement for
service between the plaintiff and the foreign state . . . .").

C.   Right to Relief

32.   I further find that FG has submitted satisfactory
evidence to establish its right to recover $29,253,664.60 in
principal and $122,675,132.50 in interest, and has therefore
satisfied the requirements of 28 U.S.C. 1608(e).   The affidavits
and documentary evidence, which include the Congo's own acknowl-
edgments of its debt (Grossman Aff. Ex. G), establish both the
fact of liability and the amount of money owed to FG.

D.   Attorneys' Fees

33.   Finally, since the Loan Agreement provides for the
recovery of attorney's fees, FG may recover its attorneys' fees.
"It is well established that, under New York law, a contract

13

provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable in an amount that is 'reasonable.'" 3H Enter., Inc. v. Murray, 994 F. Supp. 403, 404 (N.D.N.Y.), aff'd without opinion, 165 F.3d 15 (2d Cir. 1998), quoting, F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987). See also Diamond D Enter., USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) ("[R]easonableness is the touchstone for fixing an award of fees pursuant to contract . . . .").

34. Since the award of fees is limited by the requirement of reasonableness, the fees recoverable should be assessed by the familiar lodestar analysis routinely used to assess fees in cases brought under statutes that permit the recovery of reasonable attorneys' fees. F.H. Krear & Co. v. Nineteen Named Trustees, supra, 810 F.2d at 1263; Ursa Minor Ltd. v. AON Fin. Prods., Inc., 00 Civ. 2474 (AGS), 2001 WL 1842042 at *5 (S.D.N.Y. May 30, 2001).

35. The "lodestar" figure is the product of the number of hours reasonably expended on an action multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 96-99 (2d Cir. 1997); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

36. The hours actually expended and the rates actually charged are, of course, not dispositive. Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 27 (E.D.N.Y. 1997). An award of

14

fees must be limited to the number of hours reasonably expended and limited to reasonable hourly rates.

37. Judge Preska recently summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records. <u>See Forschner Group, Inc. v. Arrow Trading Co., Inc.</u>, No. 92 Civ. 6953 (LAP), 1998 WL 879710, at super* 2 (S.D.N.Y. Dec. 15, 1998). Next the court looks to "its own familiarity with the case and its experience generally . . . . Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court." <u>AFP Imaging Corp. v. Phillips Medizin Sys.</u>, No. 92 Civ. 6211 (LMM), 1994 WL 698322, at super* 1 (S.D.N.Y. Dec. 13, 1994) (quoting <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 236 (2d Cir. 1985))).

> *     *     *

> Finally, billing judgment must be factored into the equation. <u>Hensley</u>, 461 U.S. at 434; <u>DiFilippo</u>, 759 F.2d at 235-36. If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours. <u>In re "Agent Orange" Products Liab. Litig.</u>, 818 F.2d 226, 237 (2d Cir. 1987) (stating that "in cases in which substantial numbers of voluminous fee petitions are filed, the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting <u>Carey</u>, 711 F.2d at 1146)); <u>see also</u> <u>United States Football League v. National Football League</u>, 887 F.2d

> 408, 415 (2d Cir. 1989) (approving a
> percentage reduction of total fee award to
> account for vagueness in documentation of
> certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002).

See also Hensley v. Eckerhart, supra, 461 U.S. at 434.   Accord

Orchano v. Advanced Recovery, Inc., supra, 107 F.3d at 98.

38.   Reasonable hourly rates are determined by refer-

ence to fees in the community in which the action is pending and

to the skill and experience of the attorneys who worked on the

matter.   Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir.

1997).

39.   As Judge Motley has noted, "The Second Circuit has

warned that attorney's fees are to be awarded 'with an "eye to

moderation," seeking to avoid either the reality or the appear

ance of awarding "wind falls."'"   Evans v. State of Connecticut,

967 F. Supp. 673, 691 (D. Conn. 1997), aff'd without opinion, No.

97-7688, 2001 WL 1486543 (2d Cir. Nov. 15, 2001), citing Beazer

v. New York City Transit Auth., 558 F.2d 97, 101 (2d Cir. 1977).

### 1.   Hours Reasonably Expended

40.   I have carefully reviewed each of the time records

submitted by FG's counsel and conclude that the hours claimed --

approximately 330 -- are clearly excessive. Although the fact

that the defendant here is a foreign state added a level of

complication to this matter, the relevant law is concisely set

forth in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-

16

11, and the degree of complication does not justify an award of
fees for 330 hours. This number of hours is far closer to the
amount of time necessary to prepare and try a case than it is to
the amount of time necessary to draft a simple complaint and to
file for a default judgment. See Ramirez v. New York City Off-
Track Corp., 93 Civ. 0682 (LAP), 1997 WL 160369 (S.D.N.Y. Apr.
3, 1997) (case pending for four years and tried to a jury;
plaintiff sought compensation for 464.5 hours of attorney time);
Anderson v. Yarp Rest., Inc., 94 Civ. 7543 (CSH)(RLE), 1997 WL
47785 (S.D.N.Y. Feb. 6, 1997) (action pending for almost three
years and tried to a jury; plaintiff sought compensation for
462.3 hours of attorney time); Fine v. Interpublic Group of
Companies, Inc., 94 Civ. 4419 (PKL), 1997 WL 7583 (S.D.N.Y. Jan.
9, 1997) (action pending for between two and one-half and three
years and tried to a jury; compensation was sought for a total of
489 hours of attorney time).

41. There can be no serious argument that different
attorneys work at different speeds and that the mere fact that
one attorney may require seven hours to perform a task that
another attorney could do in five hours does not necessarily mean
that the former's time charges are excessive. Nevertheless,
given the very early stage at which the liability and damages
issues are being resolved in this case, and given the very modest
amount of work required, the number of hours claimed by counsel
here is far outside the range of reasonableness. See generally
DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985) (302 hours

17

"facially excessive" for civil rights action that was pending five years and resolved after one-day bench trial).

42. Based on my knowledge of the case and my knowledge of the practice of law, Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992); Big R Food Warehouses v. Local 338 RWDSU, 896 F. Supp. 292, 297 (E.D.N.Y. 1995); Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 258, 267 (S.D.N.Y. 1995), I conclude that the case could have been handled by a fifth to seventh-year litigation associate in seventy (70) hours. See generally Luciano v. Olsten Corp., supra, 109 F.3d at 117 (permitting the court to "mak[e] an across-the-board reduction in the amount of hours," in assessing a fee application). There is nothing about this case that required the work of 18 attorneys and paralegals, and the conclusion is all but inescapable that the case was overstaffed and that the overstaffing inevitably resulted in unnecessary duplication of activity. Admittedly, the case involves a staggering amount of money. Nevertheless, the factual and legal issues are simple and are not made more complex by the amount of money involved.

2. Reasonable Hourly Rates

43. As noted above, FG has submitted no information whatsoever concerning the hourly rates charged by the individuals who worked on this matter.

42. Nevertheless, rather than prolong this litigation, I conclude that it is appropriate to set a reasonable hourly rate

18

for the hypothetical attorney that I conclude could have liti
gated this matter to conclusion in approximately seventy (70)
hours.  Based on recent fee applications in this District, I
conclude that a reasonable hourly rate for an associate with five
to seven years experience is $250/hour.  See Levy v. General
Elec. Capital Corp., 99 Civ. 10560 (AKH), 2002 WL 1225542 at *4
(S.D.N.Y. June 4, 2002) (approving $275/hour); Santa Fe Natural
Tobacco Co. v. Brown & Willimason Tobacco Corp., supra, 2002 WL
498631 at *7 (approving $180-330/hour); Ace Ltd. v. Cigna Corp.,
00 Civ. 9423 (WK), 2001 WL 1286247 at *2-*4 (S.D.N.Y. Oct. 22,
2001) (approving $215-365/hour); Shannon v. Fireman's Fund Ins.
Co., 156 F. Supp.2d 279, 300 (S.D.N.Y. 2001); Yurman Designs,
Inc. v. PAJ, Inc., 125 F. Supp.2d 54, 57-58 (S.D.N.Y. 2000),
aff'd without opinion, Nos. 01-7043, 01-7093, 2002 WL 200242 (2d
Cir. Feb. 8, 2002) (approving $278.50/hour); Berlinsky v. Alcatel
Alsthom Compagnie Generale D'Electricite, 970 F. Supp. 348, 351
(S.D.N.Y. 1997) (approving $225/hour).

     45.  Applying this rate to the hours reasonably ex-
pended on this matter yields a product of $17,500.00.

     46.  The disbursements costs claimed by FG, i.e.,
$23,553.41 also appear to be excessive as a result of the case
being overstaffed.  Since my recommended award of attorneys' fees
constitutes 13.54% of the fee sought by plaintiff, I recommend
that the disbursements awarded should also be reduced to 13.54%
of the disbursements sought, or $3,189.13.

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that plaintiff be awarded judgment against the
Congo in the amount of $151,931,797.10, representing the princi-
pal and interest due to FG and that FG also be awarded $20,689.13
in attorneys' fees and disbursements.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from the date of this Report and Recommendation to file
written objections.   See also Fed. R. Civ. P. 6(a) and 6(e).
Such objections (and responses thereto) shall be filed with the
Clerk of the Court, with courtesy copies delivered to the cham-
bers of the Honorable Shira A. Scheindlin, United States District
Judge, Room 1050, 500 Pearl Street, New York, New York 10007 and
to the chambers of the undersigned, Room 750, 500 Pearl Street,
New York, New York 10007.   Any requests for an extension of time
for filing objections must be directed to Judge Scheindlin.
FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF
OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.   Thomas v. Arn,
474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34,
38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d
1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300
(2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237 & n.2 (2d Cir.

1983).

Dated:   New York, New York
         June 17, 2002

                              Respectfully submitted


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Danforth Newcomb, Esq,
Mark S. McNeil, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, New York  10022

CT Corporation
111 Eighth Avenue
New York, New York  10011
Attn:  Service of Process Department

Caisse Congolaise d'Amortissement
B.P. 2090
Brazzaville
Republique du Congo

H.E. Mathias Dzon
Ministre de L'Economie, des Finances
   et du Budget
Centre Administratif, Quartier Plateau
B.P. 2093
Brazzaville
Republique du Congo

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X
                                      :
FG HEMISPHERE ASSOCIATES, LLC,
                                      :           ORDER
                    Plaintiff,
                                      :      01 Civ. 8700 (SAS) (HBP)
          - against -
                                      :
REPBULIQUE DU CONGO,
                                      :
                    Defendant.
- - - - - - - - - - - - - - - - - - -X



SHIRA A. SCHEINDLIN, U.S.D.J.:

          I have duly considered the Report and Recommendation of

United States Magistrate Judge Henry B. Pitman, dated June 17,

2002, awarding plaintiff $151,931,797.10 in principal and

interest and $20,689.13 in attorneys' fees and disbursements.

          Because no objections were filed by either party and

because I agree with Judge Pitman's findings and conclusions, I

hereby accept and adopt the Report and Recommendation in full.

          The Clerk of the Court is directed to prepare a

Judgment and close this case.  Plaintiff's counsel is directed to

serve a copy of the Order upon defendant.


                              SO ORDERED:


                              _____
                              Shira A. Scheindlin
                              U.S.D.J.


Dated:    New York, New York
          July 16, 2002

- Appearances -

**For Plaintiff:**

Danforth Newcomb, Esq.
Mark S. McNeil, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, New York 10022